IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TAMAS R. SMITH,

                      Plaintiff,

    v.

KEVIN CARR, DR. EMMANUAL O. ODEYEMI,
DR. CRAIG D. DESTREE, JOHN DOE #1,
LARRY W. FUCHS, RYAN M. BLOUNT,
KEVIN W. PITZEN, ERIC H. PETERS,
REBECCA GARNER AND NATASHA RADTKE,

                      Defendants.

OPINION and ORDER

23-cv-888-wmc

---

Plaintiff Tamas Smith, who is representing himself, is incarcerated at Columbia Correctional Institution ("CCI"). He alleges that while at CCI, defendant prison officials retaliated against him by giving him a false conduct report, unfairly imposed restitution on him for his medical care, and subjected him to inhumane conditions of confinement. He also claims that two doctors at Aspirus Hospital lied about his ingesting synthetic cannabinoids, resulting in unfair punishment when he returned to prison.

Under 28 U.S.C. § 1915(e)(2) and § 1915A, this court must screen and dismiss any claim that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. When screening a complaint drafted by a non-lawyer, the court applies a less stringent standard. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). However, Smith must still allege enough facts to show that he is plausibly entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). For the reasons explained below, the court will dismiss Smith's complaint without prejudice, but will give him the opportunity to file an amended

complaint that provides more information about his conditions of confinement and loss of property claims.

ALLEGATIONS OF FACT

On September 22, 2023, while he was incarcerated at CCI, Smith began having difficulty breathing. He was given an albuterol inhaler and a bag to breathe into and was transported to the Health Services Unit ("HSU") by wheelchair. By the time he reached the HSU, Smith was lethargic and unable to sit up. Smith then stopped breathing and had no pulse, so prison staff injected Narcan and performed CPR. He was then transported to Aspirus Hospital, where he was treated by defendants Dr. Emmanual Odeyemi and Dr. Craig Destree. Both doctors noted that Smith was experiencing acute metabolic encephalopathy and respiratory failure with hypoxia that was likely due to toxic ingestion of synthetic cannabinoids. However, Smith's toxicology screens came up negative for cannabinoids, opioids and any other illegal drug. He was eventually released after four days, with a recommendation that he receive lung cancer screening due to an effusion in his left lung.

When he returned to the prison, Smith was placed in observation for two days and then was released into restrictive housing due to receiving a conduct report from defendant Captain Eric Peters, for "use of intoxicants." Peters noted that he believed Smith had overdosed on opioids because he responded to the injection of Narcan, and the hospital's discharge summary theorized that Smith had stopped breathing due to opioid ingestion. (This was inaccurate, as the hospital notes stated that Smith had likely become ill due to the ingestion of synthetic cannabinoids, not opioids.) Defendant Ryan Blount, the Security Director at CCI, approved

the conduct report and designated it as a "major" conduct report that triggered a due process hearing.

A due process hearing was held on October 4, 2023, with defendants Captain Kevin Pitzen, Rebecca Garner and Natasha Radtke acting as the disciplinary committee. Smith argued that the medical emergency was caused by his underlying health problems, including asthma, hypertension and blood clots, among other conditions, and that there was no evidence that he had ingested any illegal drugs. Nonetheless, defendants Pitzen, Garner, and Radtke found Smith guilty of using intoxicants and sentenced him to 120 days in disciplinary separation and "$99,999.99" in restitution to pay for the medical costs incurred during his four-day hospital stay. Smith appealed the decision to defendant Warden Larry Fuchs, but Fuchs affirmed the decision, though he reduced Smith's disciplinary separation to 60 days.

While he was held in observation, Smith was deprived of all his property, including his clothing and back brace. His cell in restrictive housing was filthy, with bodily fluids and other waste, ants and residue from pepper spray that exacerbated Smith's asthma. His shower had black mold, and he was denied recreation. When he eventually returned to his cell, much of his personal property and legal mail was missing, including food, account statements, hygiene products, dishes, and papers related to his criminal appeal.

OPINION

Plaintiff contends that defendants violated his constitutional rights under the First, Eighth and Fourteenth Amendments. The court will discuss each of his claims below.

I.     **First Amendment Retaliation**

Plaintiff contends that several defendants retaliated against him because he exercised his right to seek medical attention. To plead a First Amendment retaliation claim, a plaintiff must allege that: (1) he engaged in activity protected by the First Amendment; (2) the defendant took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in the defendant's decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Plaintiff's retaliation claims fail because his allegations are insufficient to infer that any defendant's conduct was motivated by plaintiff's request for medical treatment.

First, plaintiff alleges that a John Doe correctional officer retaliated against him by telling hospital staff that he had likely ingested illicit drugs. But plaintiff's other allegations undermine any suggestion that John Doe's report to the hospital was retaliatory. Specifically, plaintiff was having a medical crisis during which HSU staff decided he should be transported to the local emergency room. Nothing in his allegations suggests that his seeking medical care negatively affected the Doe officer in any way. Plaintiff also admits that he was lethargic and then non-responsive, and that he responded to Narcan and CPR. It was reasonable for the correctional officer to theorize that plaintiff had ingested something toxic, such as an illegal drug. Moreover, plaintiff went on to receive treatment over the course of four days from medical professionals. It would be unreasonable to infer that those professionals would accept the report of a prison employee without verifying whether plaintiff's symptoms and responses matched those of someone who had overdosed. Thus, plaintiff may not proceed with a retaliation claim against the John Doe officer.

Second, plaintiff contends that the hospital physicians, Drs. Odeyemi and Destree, retaliated against him by noting in his medical records that his condition was likely caused by the ingestion of synthetic cannabinoids. He argues that the doctors were obviously lying because his toxicology results showed no illicit drugs in his system. But plaintiff has again identified no reason why those doctors would want to retaliate against him.[1]

Third, plaintiff alleges that defendants Peters and Blount retaliated against him by issuing him a conduct report for "use of intoxicants"; defendants Pitzen, Garner and Radtke retaliated against him by finding him guilty of the conduct report; and defendant Warden Fuchs retaliated by upholding the disciplinary committee's decision and restitution order. Again, however, plaintiff's allegations are insufficient to plead a retaliation claim against these defendants because nothing in his complaint suggests that his seeking medical care would motivate any of these defendants to retaliate against him. Rather, the only plausible explanation is that these defendants thought plaintiff should be disciplined for using intoxicants, a clear violation of prison policy. Therefore, plaintiff may not proceed on retaliation claims against these defendants either.

---

[1] Moreover, some research suggests that synthetic cannabinoids are not always detected on routine toxicology screens. See https://nida.nih.gov/research-topics/synthetic-cannabinoids ("People have reported using these products [synthetic cannabinoids] because they were sometimes cheaper and more accessible alternatives to cannabis and are mostly undetected by routine urine drug screens."); https://pmc.ncbi.nlm.nih.gov/articles/PMC5507593/ ("[Synthetic cannabinoids] use is only detectable with advanced techniques that are not commonly employed in drug treatment.") (last visited Nov. 4, 2024).

## II. Fourteenth Amendment Due Process

Plaintiff next contends that he was denied procedural due process when the disciplinary committee found him guilty of using intoxicants and imposed segregation and restitution. A prisoner challenging the process afforded in a prison disciplinary proceeding must show that: (1) he has a liberty or property interest with which the state interfered; and (2) the procedures he was afforded upon that interference were constitutionally deficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). Here, plaintiff argues that defendants Peters and Blount gave him a false conduct report and that defendants Pitzen, Garner, Radtke and Fuchs imposed unfair discipline despite the lack of evidence to support the conduct report.

Plaintiff does not state a due process claim based on allegations that he received a false conduct report, because an improperly motivated or even a false conduct report does not alone amount to a denial of due process. *See Lagerstrom v. Kingston*, 463 F.3d 621, 624–25 (7th Cir. 2006) (false conduct reports do not create procedural due process claim because inmate has ability to litigate truthfulness of report through hearing process); *Maus v. Boughton*, No. 22-CV-141-JDP, 2022 WL 1288445, at *3 (W.D. Wis. Apr. 29, 2022) (same). Nor does plaintiff state a claim against the defendants involved in adjudicating the conduct report, because due process does not demand that the hearing examiner comes to the correct decision, and this court cannot review the merits of the decision. *See, e.g., Turner v. Boughton*, No. 17-cv-203-jdp, 2021 WL 1200597, at *11 (W.D. Wis. Mar. 30, 2021) (citing *State ex rel. Curtis v. Litscher*, 2002 WI App 172, ¶ 12, 256 Wis. 2d 787, 650 N.W.2d 43 ("Certiorari is the well-established mode of judicial review for inmates ... who seek to challenge prison disciplinary decisions.")).

6

Due process does require "some evidence" to support the imposition of any discipline that implicates a liberty or property interest. Although plaintiff's 60-day stay in segregation is not sufficient to implicate a liberty interest, *see Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024), *Smith v. Akpore*, 689 F. App'x 458, 460 (7th Cir. 2017), the restitution order does implicate a property interest.  He therefore had a right, protected by the Constitution, to due process when he was assessed restitution. *Hull v. Cooke*, No. 22-2848, 2024 WL 81104, at *2 (7th Cir. Jan. 8, 2024) ("Prisoners likely have a property interest in the funds in their trust accounts[.]") (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).)

Although plaintiff had a protected property interest in his trust fund account, the decision to impose restitution must be supported only by "some evidence"—a "meager threshold." *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018) (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).)  This standard is satisfied if "there is any evidence in the record that could support the conclusion reached." *Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (quoting *Hill*, 472 U.S. at 455–56).  This court cannot reweigh the evidence underlying the hearing committee's decision. Instead, the court must confine its inquiry to whether any reliable evidence exists to support the conclusions drawn by the committee.  Once found, the court cannot look for other record evidence that would support a contrary finding. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

Here, some evidence supports the disciplinary hearing committee's finding that plaintiff used an intoxicant, contrary to his argument that there was no evidence.  Specifically, medical professionals noted that plaintiff had likely ingested synthetic cannabinoids, and plaintiff

7

responded to Narcan. Under the looser rules of evidence that apply to prison disciplinary hearings, this was "some evidence" to support the decision.

Plaintiff also argues that the restitution order of $99,999 is too high. However, under the Wisconsin law permitting imposition of restitution as a penalty for violating prison rules, "the hearing officer may impose an estimated maximum restitution amount" when "the amount of restitution is unknown at the time of the hearing." Wis. Admin. Code § DOC 303.70(7). This does not mean that plaintiff will be required to pay the full amount of restitution imposed. Rather, "[w]hen, the actual amount of restitution is less than the estimated amount, only the actual amount shall be assessed." *Id.* In other words, it appears that $99,999 was imposed as a placeholder, until prison officials can determine the exact cost of plaintiff's medical care. Using this placeholder is permitted by Wisconsin law and is not a violation of due process.

### III. Remaining Claims

Plaintiff's complaint includes other allegations about the poor conditions of his cell in the restrictive housing unit, which implicate his Eighth Amendment rights. He also includes allegations about the confiscation of property from his cell, which implicates the Fourteenth Amendment. However, plaintiff has not connected these allegations to any of the defendants he named in his complaint or any other individual prison employee. Specifically, plaintiff does not say who was responsible for the conditions of his segregation cell and whether he complained about the conditions to anyone who had the authority to fix the problems. He likewise does not say who was responsible for searching his cell after he was removed from it, or who he believes should be held liable for his lost property. Without such information,

8

plaintiff cannot proceed with these claims. Therefore, the court will give plaintiff the opportunity to file an amended complaint regarding his (1) loss of property and (2) conditions of confinement. He should explain clearly who he believes was responsible and why. If he files an amended complaint, the court will review it to determine whether it states a claim on which plaintiff may proceed.

## ORDER

IT IS ORDERED that:

1. Plaintiff Tamas Smith's complaint is DISMISSED without prejudice for failure to state a claim upon which relief may be granted.

2. Plaintiff may have until December 5, 2024, to file an amended complaint that identifies proper defendants for plaintiff's conditions of confinement and loss of property claims.

Entered this 7th day of November, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge